**Harold DELSON and Lyn Delson, Plaintiffs,**

v.

**Virginia D. MINOGUE and John Minogue, Defendants.**

Civ. A. No. 19692.

United States District Court
E. D. New York.

Jan. 11, 1961.

---

**7.** Hurn v. Oursler, 1933, 289 U.S. 238, 248, 53 S.Ct. 586, 590, 77 L.Ed. 1148.

Joseph Segal, New York City, for plaintiffs.

John E. Morris, New York City, for defendants.

MISHLER, District Judge.

This is a motion for judgment on the pleadings, pursuant to Rule 12(b), or for summary judgment, pursuant to Rule 56(b), Fed.Rules Civ.Proc. 28 U.S.C.A. dismissing the complaint on the ground that the action is barred by the one-year Connecticut Statute of Limitations. C.G.S.A. § 52–584.

Plaintiffs, residents of Rhode Island, bring this action for property damage and personal injuries sustained on October 27, 1957, in the State of Connecticut, against the defendants, residents of the State of New York. The moving papers show that the complaint was filed in the office of the Clerk of this Court on the 20th day of April 1959, approximately eighteen months after the occurrence.

The opposing affidavits do not dispute the application of the one-year Statute of Limitations in this case. Plaintiffs, however, set forth facts which plaintiffs claim constitutes an equitable estoppel which, in effect, would bar the defendants from setting up the Statute of Limitations.

Plaintiff, Harold Delson, states that prior to November 8, 1957, one William J. Marx telephoned him and arranged for an appointment at plaintiff's home on November 8, 1957. Mr. Marx represented that he was an investigator and adjuster for the insurance company, insuring the above-named defendants for loss sustained by reason of defendants' negligence. Mr. Marx visited the plaintiffs at their home on the appointed date. At his request, plaintiffs signed a four-page statement, concerning the happening of the accident. The affidavit then relates that Mr. Marx advised the plaintiffs that they had a "perfect case and that the same would be settled; that *it is not necessary to hire a lawyer*, that it will be a question of how much the company will offer; that in the meantime plaintiffs should cooperate by submitting the property damage bill; permit an inspection of said automobile; submit doctors' bills and to submit themselves to be examined by the insurance company doctor to be designated." (Italics supplied.)

The affidavit continues that there were many conversations subsequent to November 8, 1957, concerning the settlement of the claim; that Mr. Marx repeated "that there was no necessity to hire a lawyer to sue as that would be costly to Plaintiff and that if he did so, the insurance company would handle the case differently to his detriment."

The affidavit states that after July 1, 1958, Mr. Marx advised the plaintiff that the file was forwarded to the New York office and that the claim would be settled. It thereafter became increasingly difficult to contact Mr. Marx. When he was finally reached, he requested the plaintiffs to be patient and that "this case will be settled."

On October 3, 1958, plaintiff, Harold Delson, visited Joseph Segal, an attorney-at-law, and retained him in this matter. The plaintiff did not advise his attorney of the negotiations he had with Mr. Marx. At the time the plaintiff retained his attorney, the attorney was suffering from a serious illness which prevented him from attending to his duties. At the time of the retainer and for sometime thereafter, the attorney did not know that there was a one-year Statute

of Limitations governing this matter, and was too preoccupied with his own illness for some months thereafter to investigate and determine the law and the facts of the case. On October 14, 1958, a claim letter was sent to Mr. Marx on behalf of the plaintiffs. The attorney first learned of all the negotiations that had preceded his retainer, after an action was started, and the answer was interposed.

The reply affidavit of John E. Morris, attorney for the defendants, points out that at the time of the retainer the Statute of Limitations had not yet run, and that 24 days remained for the commencement of an action; he further states that neither the illness of the attorney, nor the plaintiffs' ignorance of the law, is a basis for equitable estoppel.

The principal questions raised on this motion are:

1) May the plaintiff raise equitable estoppel as an issue where it was not pleaded, and

2) Has the plaintiff presented a question of fact on equitable estoppel.

Plaintiffs' claim will not be defeated on motion for summary judgment or judgment on the pleadings simply because the pleadings do not reflect the facts that would overcome defendants' affirmative defense. In Rossiter v. Vogel, 2 Cir., 1943, 134 F.2d 908, 912, the Court said, at page 912:

"  *   *   * Where facts appear in affidavits upon motion for a summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment."

See also Wittlin v. Giacalone, 81 U.S. App.D.C. 20, 154 F.2d 20, and McLain v. Jarecki, D.C., 107 F.Supp. 148.

The Statute of Limitations of the State of Connecticut, governs plaintiffs' claim. Tublitz v. Hirschfeld, 2 Cir., 1941, 118 F.2d 29; Garford Trucking Co., Inc.

v. Popp, 203 Misc. 554, 118 N.Y.S.2d 158. Both the State of New York and the State of Connecticut have invoked the doctrine of equitable estoppel. Basak v. Damutz, 105 Conn. 378, 135 A. 453; Lippitt v. Ashley, 89 Conn. 451, 94 A. 995; Canfield v. Gregory, 66 Conn. 9, 33 A. 536; Sweeney v. Pratt et al., 70 Conn. 274, 39 A. 182; Veeder v. Mudgett, 95 N.Y. 295; Rothschild v. Title Guaranty & Trust Co., 204 N.Y. 458, 97 N.E. 879, 41 L.R.A.,N.S., 740; Drexel v. Berney, 122 U.S. 241, 253, 7 S.Ct. 1200, 30 L.Ed. 1219.

Equitable estoppel has been invoked by the courts to prevent a destruction or forfeiture of one party's rights by the conduct of the other. It is a standard of fair dealing applied by the courts. The conduct of the party against whom the doctrine is applied need not amount to actionable fraud or misrepresentation, but often the elements are present. In Pomeroy's Equity Jurisprudence, Volume 3, 5th Edition, Section 802, page 180, the author defines the nature of equitable estoppel as follows:

"Equitable estoppel in the modern sense arises from the *conduct* of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel."

The author further states at page 233:

"It is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might

have retrieved his position and saved himself from loss."

Except in one material aspect, the case of Bergeron v. Mansour, 1 Cir., 1945, 152 F.2d 27, appears to be factually similar with the case at bar. In the Bergeron case, the adjuster carried on the negotiations for the full year after the accrual of the cause of action, and then advised the plaintiff that the claim was barred.

█ The defendant here urges that the distinction between the Bergeron case and the case at bar, is that here the plaintiff concededly sought legal advice twenty-four days before the tolling of the Statute. Assuming *arguendo* that the facts set forth in the answering affidavit are true, an issue of fact is created as to whether the defendants' conduct caused plaintiffs to change their position to their detriment. The defendants urge that the plaintiff, having retained a lawyer, demonstrated that they no longer were relying on the defendants' conduct or representations; plaintiffs could have commenced an action prior to October 27, 1958. Though plaintiff *could have* commenced an action within the 24-day period remaining in the one-year limitation, it cannot be said that plaintiffs were not prejudiced, if relying on the defendants' representative, plaintiffs were led to believe that the matter was to be settled and it was inadvisable to retain counsel. The period within which they may have brought the action for all practical purposes, has been shortened by some 341 days.

In Bergeron v. Mansour, Supra, the Court said, at page 30:

"A person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made."

A question of fact is presented.

Motion denied. Settle order on two days notice.